UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
CONAIR CORPORATION,                :
                                   :   Civil Action No. 303 CV 0958 (MRK)
        Plaintiff,                 :
                                   :
    v.                             :
EURASIA CONCEPTS, INC.             :
d.b.a. BIO IONIC, INC.,            :
        Defendant.                 :
---------------------------------------------------------x

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF IT'S MOTION TO COMPEL**

Plaintiff Conair Corporation hereby responds to Defendant BioIonic's opposition to Plaintiff's Motion to Compel as follows:

The production of documents and information by BioIonic has been incomplete on its face and strongly evidences an unwillingness by BioIonic to comply with its obligations to produce relevant evidence under the Federal Rules of Civil Procedure and this Court's Rules. Such unwillingness is evidenced in the two areas which lie at the heart of every patent lawsuit, namely the details of the technology and the Defendant's profits.

**Defendant's Suppression of Ingredient Information Which is Crucial to Proving Patent Infringement Violates the Rules.**

Consider first the issues surrounding the details of the technology practiced by BioIonic. Obviously, to prove patent infringement, it must be proven that the technology practiced by BioIonic falls within the metes and bounds of the claims of the patent in suit. Plaintiff cannot do this without certain relevant information requested in its document requests respecting ingredients of BioIonic's products and the amounts of ingredients.

On August 6, 2003, Plaintiff served a straightforward document request, number 44, seeking "documents and things sufficient to identify the ingredients and amounts of ingredients"

of Defendant's hair straightening products. No responsive documents were produced, thus prompting the filing of this motion, in part.

Similarly, Plaintiff's interrogatory number 17 requested the ingredients and amounts of each ingredient in Defendant's hair straightening products. Defendant responded, two months later on October 8, 2003, that such information is not within its possession, custody or control.

When counsel to Defendant was reminded that FDA labeling requirements compel the Defendant to have the sort of information, on December 5, 2003 supplemental responses to the interrogatories listed the identity of ingredients, but failed to include the full information requested in response to interrogatory number 17. The partial response to the interrogatory is insufficient and a complete response must be compelled.

However, after this motion was filed, finally, on January 8, 2004, with its response to motion, Defendant did produce the requested information, including ingredient chemical names, the amount of each constituent ingredient, the source of the ingredient, mixing instructions, heating and cooling process steps, and, apparently, for the first time, the name of the manufacturer of the product (document BIO-000084 and BIO-000257).

Indeed, the production made in response to this motion should have been made when it was due months ago, and included requested ingredients, formulations, manufacturer identities, recipes, manufacturing processes, purchase orders, material data, a workbook instructing people how to practice the patented method and use the patented materials, and the like, but still was not in compliance with the Rules as will be detailed below.

**BioIonic's Supplemental Production Still Fails to Meet the Standards of Discovery.**

Despite the supplemental production of documents by Defendant in response to the motion to compel filed by Plaintiff, the production by BioIonic is still defective. BioIonic has

provided formulas for the two creams which make up one of its products. Apparently, it has two such products, one of which seems to have a viscosity deeper within the range claimed in the patent at issue in this case. It is unclear from the documents produced by BioIonic which of the two formulas has been produced, but it is believed that if both formulas are produced they will show a product characteristic migration in the direction taught by the patent in suit. Such information must be produced.

Moreover, mysteriously, Defendant has produced only its purchase orders and only for the years 2002 and 2003. This response to Plaintiff's discovery requests is significantly substandard especially since Defendant has admitted sales of the product since 1999. This omission may be an attempt to hide formulation information with respect to the above second formula.

Defendant has also failed to produce, even in its latest third response to the discovery propounded on August 6, any purchase orders from their distributors. Such purchase orders will, no doubt, show sales of other products convoyed by sales of the infringing products.

Defendant must be compelled to produce such purchase orders, as well as samples of its old and new formulations, recipes for preparing them and any evidence surrounding the change of formulations.

**Defendant's Failure to Produce Sales and Profit Information Merits an Order to Compel.**

In similar fashion, Plaintiff's interrogatory number 9, of August 6, 2003, requested total dollar sales and expenses. Defendant's response included only a statement of the total dollar volume for a period of years, and assembly costs, and general and administrative costs, whatever that means, estimated at 30%. Notably Defendant's response did not include any cost for the cream purchased from its supplier. It included no specific general or administrative costs.

3

Once again, in response to a threatened motion to compel, on December 5, Defendant served an interrogatory answer with conclusory cost information for a single unit of product, without any backup documentation required by document request number 25.

Finally, in response to the filing of the subject motion to compel, Defendant attempts to avoid its obligation to produce documents by submitting the affidavit of Mrs. Romero apparently alleging that the general and administrative cost figure produced earlier did not include the cost of the bulk material prepared in accordance with the patent in suit.

However, even now Plaintiff is left to take the conclusory word of this Defendant with respect to profits, and left without the evidence to verify the figures, and can only speculate, assuming that the quoted costs have not changed, to extrapolate a putative cost of goods. Moreover, this cost of goods is based on the present price of bulk material and present general and administrative costs, a price which is likely greater than the costs when the material was introduced five years ago, thus effectively showing a much lower profit, and allowing the Defendant to hide profits.

Clearly, Defendant should be compelled to produce purchase orders it has received from its customers and documents evidencing all of its actual costs, as well as earlier and later ingredient and formulation information for all of its products.

In paragraph 6 of his affidavit, Donald Grier confesses that Defendant does not have custody of the requested invoices as it sells the products to sub-distributors. However, Defendant fails to produce its copies of purchase orders from those sub-distributors or its invoices to those sub-distributors, which would identify the sub-distributors and allow Plaintiff to subpoena such evidence. These documents should be compelled.

Defendant has confessed to having electronic accounting files, but has failed to produce them. In particular, in her affidavit, Mrs. Romero indicates that accounting records are kept using Quick Books software, but has failed to produce printouts of the same. (Romero Aff. ¶ 16), despite Document Request No. 22 which seeks "all electronic accounting, inventory control and other databases and their associated software programs...evidencing inventory and dollar amounts and unit volume of annual wholesale and retail sales of Defendant's Straightening Products and/or Products..." The database files for the software, as well as the program files should be produced.

Indeed, the conclusory information produced by Defendant under threat of motion is suspect on its face, claiming such questionable expenses as $.42 for bulk ocean freight and $.68 to fill four jars and put them in a box with four instruction sheets.

### Defendant's Failure to Adequately Respond to Discovery Is Not Acceptable and Has Prevented Plaintiff from Obtaining Information Necessary to this Lawsuit.

If the above leaves any doubt with respect to the inadequacy of the Defendant's compliance with discovery, a simple illustrative attempt to use and information to obtain meaningful data irrefutably demonstrates the problem.

Defendant, as noted above, has not given a single invoice evidencing its sales, or the price at which it sells product, despite document requests numbers 18-20 seeking documents evidencing sales information. Perhaps this information could be derived from information provided.

If one notes that the answer to interrogatory number 9 in the key its sales of $1,209,283 and the supplementary answer to the same interrogatory indicated a per-unit course of $7.29, doing the math gives you 165,882 units. However, document number BIO-000 242 reports total unit sales of only 98,267. It would then be logical to assume that the difference represents

5

Defendant's profits. In other words, total sales of 98,267 units for a total cost of $7.29 each gives you a cost of $716,366. Subtracting this from sales of $1,209,283 gives a total profit of $492,916. That would seem simple enough, except that Plaintiff should not be forced to calculate such things on the basis of speculation, when Defendant can so easily produce its invoices to its customers showing the price and quantity of goods sold.

Moreover, the above number does not even agree with other evidence produced by the Defendant. For example, in the affidavit on Mrs. Romero, she states that total sales since 2000 amount to roughly $774,000 "after expenses" (which expenses are not defined), but then says that profits are much lower because of the cost of goods.

In response to this motion, Defendant produced purchase orders which were composed by the Defendant showing deliveries of $708,000 in product in 2002 and 2003, suggesting a profit of only $66,000 less the cost of goods in 2000 and 2001, perhaps suggesting no profit at all or even a loss. Plaintiff can only speculate. Defendant has long had the documentation to do the calculation, now it is Plaintiff's turn to be apprized of the relevant facts.

That evidence was requested during the summer and with extensions more than four months ago. Obviously, Defendant must be compelled to produce documents and other evidence responsive to all requests and answers to all interrogatories.

Plaintiff must be provided with documents and information responsive to its outstanding discovery requests so it may ascertain the real facts of this case. Defendant's half responses have only clouded the facts of the case and have caused confusion and created inconsistencies. Defendant must be compelled to adequately respond to Plaintiff's discovery requests in accordance with its obligations under the Rules.

6

### Plaintiff Complied with the Court's Rules Respecting Motion Filing.

The Defendant's remarks, at the beginning of the brief respecting the conference before the Court, are inapplicable as they referred to Judge Squatrito's rules, and that judge is no longer handling this matter. In any case, the spirit of the rules is to avoid unnecessary motion practice, and as is apparent from the above, Plaintiff has granted extensions, and then, after inadequate responses were filed waited almost two months only to be given incomplete information once again, despite repeated entreaties for compliance with discovery. Plaintiff's motion to compel was properly filed.

In conclusion, this Court should enter an order compelling Defendant to fully answer Plaintiff's Interrogatory Nos. 9, 12 and 17 and each and every one of Plaintiff's First Requests for Production of Documents. Because the suppression of evidence was intentional, this Court should award Plaintiff's attorney's fees and costs in making this motion.

Dated: January 20, 2004

Respectfully submitted,

By_____
Anthony H. Handal (CT 03837)
Kirkpatrick & Lockhart, LLP
599 Lexington Avenue
New York, NY 10022
212-536-4870 phone
212-536-4875 fax

Attorneys for Plaintiff Conair Corporation

## CERTIFICATE OF SERVICE

I, Catherine R. Keenan, an associate with Kirkpatrick & Lockhart LLP, counsel for Plaintiff, Conair Corporation, hereby certify that a copy of the foregoing Plaintiff's Reply Brief in Support of its Motion to Compel was served today, January 20, 2004, upon all parties by placing a copy of same in first class mail, postage prepaid, addressed as follows:

Brian T. Foley, Esq.
McGovern & Associates
One Lafayette Place
Greenwich, CT 06830

Dated: January 20, 2004

By: _____
Catherine R. Keenan

8